UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE DIAUNDRA ROGERS, | No. 2:23-cv-0238 DJC CSK P |
| Petitioner, | |
| v. | FINDINGS & RECOMMENDATIONS |
| JEFF LYNCH, | |
| Respondent. | |

Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his amended petition, petitioner challenges his 2019 conviction for first degree murder. (ECF No. 24.) Petitioner was sentenced to 50 years to life in state prison. Petitioner claims that defense counsel was ineffective for failing to seek a pinpoint jury instruction on the defense of subjective provocation which would have reduced the murder charge from first degree to second degree.

After careful review of the record, this court concludes that the petition should be denied.

I. Procedural History

On February 7, 2019, a jury found petitioner guilty of first degree murder in the Nevada County Superior Court, Case No. TF16000201. (ECF Nos. 14-1, 14-2.) Petitioner was sentenced to 25 years to life, plus an additional 25 years for the special allegation that he used a firearm in the commission of the murder. (ECF No. 14-2.)

1

Petitioner appealed the conviction to the California appellate court. After briefing (ECF Nos 28-14 - 28-16), the appellate court affirmed the judgment on November 18, 2021. People v. Rogers, No. C089779. (ECF No. 14-2.)

Petitioner filed a petition for review in the California Supreme Court. (ECF No. 14-3.) The California Supreme Court denied the petition on January 26, 2022, without comment. (ECF No. 14-4.)

On March 25, 2022, petitioner filed a petition for recall in the Nevada County Superior Court, which was denied on November 18, 2022. (ECF Nos. 14-5, 14-6.)

On November 7, 2022, petitioner filed a petition for writ of habeas corpus in the Nevada County Superior Court, which was denied on November 23, 2022. (ECF Nos. 14-7, 14-8.)

Petitioner filed his original petition on February 8, 2023. (ECF No. 1.) On November 17, 2023, respondent's motion to dismiss was granted, and petitioner was ordered to file an amended petition raising only his exhausted claim (claim one). (ECF No. 22 (adopting August 28, 2023 findings and recommendations).)

On December 18, 2023, petitioner filed an amended petition. (ECF No. 24.) Respondent filed an answer. Petitioner did not file a reply.

II. Facts[1]

After independently reviewing the record, this court finds the appellate court's summary accurate and adopts it herein. In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> In April 2016, defendant and his girlfriend Felicia Spruell-Jones were evicted from their home. Days after they were evicted, Spruell-Jones's dead body was found underneath a highway exit overpass, a gunshot wound in her face, and a shell casing several feet away. She also had injuries on her face and arm that were consistent with a car driving over her. It was later determined that the gunshot to her face was the primary cause of Spruell-Jones's death, but the blunt head injury was a contributing cause as well.

---

[1] The facts are taken from People v. Rogers, No. C089779 (Nov. 18, 2021), a copy of which was lodged by respondent on July 6, 2023 (ECF No. 14-2).

In December 2016, following an investigation, the People charged defendant with Spruell-Jones's murder. (§ 187.) In committing that murder, the People alleged defendant personally used a firearm, discharged a firearm, and discharged a firearm causing great bodily injury or death. (§ 12022.53, subds. (b), (c), & (d).) Defendant pleaded not guilty.

During trial, counsel discussed with the trial court whether there was sufficient evidence to warrant an instruction on voluntary manslaughter. The prosecutor argued there was no evidence the victim was killed during a fight and thus, no evidence to support a voluntary manslaughter instruction. Defense counsel argued to the contrary. The court deferred on the ruling until the end of trial.

At the end of trial, the court again raised the issue of whether to instruct the jury on voluntary manslaughter and invited further discussion from both parties. Counsel each submitted the issue based on arguments made off the record. The court ruled: "I do not believe that sufficient evidence of provocation has been presented to warrant the giving of this jury instruction, so I'm going to deny that jury instruction."

During closing arguments, defendant's counsel argued for defendant's acquittal. Counsel posited defendant and Spruell-Jones were in an argument when the gun accidentally went off, killing Spruell-Jones: "That is not second degree murder. That is not first degree murder. Might be something else, but it's not what he's charged with. That might be a hard pill to swallow, but it's not what he's charged with." Counsel offered the jury multiple other theories that would result in defendant's acquittal: "[t]he firearm discharged itself. [¶] [f]irearm malfunction. [¶] [i]ntoxication related."

"So at this point what I just want to do is implore you folks to look into these alternative explanations. Essentially what I have given you are several factors for the three main questions to ask why [exit the freeway there]? . . . How did [Spruell-Jones] end up dead or what action was it that led to her death? I have essentially given you a choose-your-own-adventure map, that any of the factors under these three questions that we covered in any mixture leads to a not guilty verdict."

Counsel concluded: "The factors that we presented to you this morning swing in only one direction and that is a not guilty verdict."

The court instructed the jury on murder, including the degrees of murder. "If you decide that the Defendant committed murder, it is murder of the second degree unless the People have proved beyond a reasonable doubt that it is murder of the first degree as defined in CALCRIM Number 521." The court then instructed the jury on CALCRIM No. 521, which requires the People to prove defendant "acted willfully, deliberately[,] and with premeditation" when he killed Spruell-Jones.

On February 7, 2019, the jury found defendant guilty of first degree murder. The jury also found true the allegation that defendant

> committed the murder with a firearm.  On May 31, 2019, the trial court sentenced defendant to an aggregate term of 50 years to life in state prison.

People v. Rogers, slip op. 1-4 (ECF No. 14-2 at 1-4).

III. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 569 U.S.

58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id.  Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue.  See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Id. at

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

5

1   103.

2       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

    The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

    Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no

1   reasoned decision is available, the habeas petitioner has the burden of "showing there was no

2   reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

3         A summary denial is presumed to be a denial on the merits of the petitioner's claims.

4   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

5   just what the state court did when it issued a summary denial, the federal court reviews the state

6   court record to "determine what arguments or theories . . . could have supported the state court's

7   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

8   arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

9   Court." Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there

10  was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939

11  (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

12        When it is clear, however, that a state court has not reached the merits of a petitioner's

13  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

14  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v.

15  Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

16  IV.  The Parties' Arguments

17      A.  The Amended Petition

18        In his sole habeas claim, petitioner contends that he was denied the effective assistance of

19  counsel because trial counsel failed to request a pinpoint jury instruction (CALCRIM No. 522)[3]

20  informing the jury that if petitioner was provoked to commit murder, the jury could only find him

21  guilty of second degree murder.  (ECF No. 24 at 5-12.)  Because trial counsel's request for an

22  instruction on voluntary manslaughter was denied, petitioner argues that there was no valid

23  strategic reason for counsel not to seek an instruction reducing first degree murder to second

---

[3] In pertinent part, CALCRIM 522 provides as follows:  "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter].  The weight and significance of the provocation, if any, are for you to decide.  [¶]  If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder.  [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.]"  Judicial Council Of California Criminal Jury Instruction 522.

1  degree murder (CALCRIM No. 522).

2  Petitioner contends that because during deliberations the jury requested to view the videotaped interrogation of petitioner, which revealed he was subjectively provoked by the victim's admission hours before the killing that she had an affair the previous night with a man who paid $300 for sex, there is a reasonable probability that the jury would have found petitioner guilty of second degree murder rather than first degree murder.  (ECF No. 24 at 6-7.)  Petitioner points out that even the police "characterized the videotaped interrogation as a confession to killing [the] victim in the heat-of-passion.  ("You told us about how it was just a heat-of-moment thing." (ECF No. 24 at 8.).)  Petitioner argues that such strong evidence of subjective provocation also included aggressive behavior by the victim.  (ECF No. 24 at 11.)

Petitioner contends that none of the instructions included the concepts of provocation or heat of passion.  In addition, he argues that more evidence was required to elevate intentional killing from second degree to first degree premeditated murder.  (ECF No. 24 at 11.)  Because the jury requested a simpler definition of premeditation, and the jury was simply referred back to jury instruction CALCRIM No. 571, petitioner maintains that trial counsel should have requested CALCRIM No. 522 at that time.

Petitioner contends that these issues demonstrate how close the question of premeditation and deliberation was and show that if trial counsel had requested CALCRIM No. 522, at least one juror would have entertained a reasonable doubt on the charge of first degree murder.  (ECF No. 24 at 12.)  Petitioner concedes that trial counsel argued against finding premeditation and deliberation, highlighting the prosecution's burden of proof, and that there wasn't any evidence of deliberation by petitioner, arguing that "in the rules that the judge has read to you, you also see that a decision to kill made rashly, impulsively or without careful consideration is not deliberate and premeditated." (ECF No. 24 at 12.)  But he contends such argument did not absolve trial counsel of his obligation to present effective assistance.  Petitioner argues there was substantial evidence that petitioner acted under subjective provocation sufficient to negate premeditation and deliberation, which would have reduced the verdict from first to second degree murder if the jury had been instructed that it could consider petitioner's subjective provocation in evaluating

8

premeditation and deliberation. (ECF No. 24 at 12.)

B. Respondent's Answer

Respondent contends that a fairminded jurist could conclude that petitioner misunderstood trial counsel's closing argument, and the underlying goal of greatly reducing petitioner's prison exposure. (ECF No. 29 at 10.) Respondent argues that the record evidence demonstrates the reasonableness of the state appellate court's findings that trial counsel acted reasonably and strategically based upon (1) the jury instructions given were adequate; and (2) the trial court found that there was insufficient evidence of provocation which foreclosed a manslaughter theory of defense. (Id.)

First, the jury was instructed on the elements of murder, and informed that a murder finding must be in the second degree unless the prosecution proved that petitioner acted with the specific intent required for first degree murder. (ECF No. 29 at 11) (citing 5RT 1135-36 (ECF No. 28-11).) Based on such instruction, respondent argues that the state appellate court "reasonably concluded that counsel could believe it was superfluous to have a special instruction explaining that if the evidence showed petitioner did not harbor the requisite mental state for first degree murder, then the jury should conclude petitioner was guilty of second-degree murder." (ECF No. 29 at 11) (citing ECF No. 14-2 at 4-5).) Thus, respondent contends it follows that "a fairminded jurist could agree with the state [appellate] court's conclusion that counsel could reasonably focus on acquittal rather than highlighting the option of second-degree murder." (ECF No. 29 at 11.)

Second, respondent points out that trial counsel could focus on acquittal yet still benefit from a second-degree murder verdict if the jury decided petitioner murdered, but with something less than first-degree intent. (ECF No. 29 at 11.) Further, respondent notes trial counsel argued there was insufficient evidence of deliberation and premeditation. (ECF No. 29 at 11) (citing 5RT 1166-59, 1173 (ECF No. 28-11 at 77-80, 84).) Therefore, respondent contends trial counsel was able to "rely on the given instructions that a murder finding without the heightened mental state was automatically a second-degree murder finding, but also pursue the primary goal of advocating that the evidence showed Petitioner should be acquitted of any murder." (ECF No. 29

at 11) (citing 5RT 1170-73, 1175 (ECF No. 28-11 at 81-84, 86).)  Had the jury been instructed with CALCRIM No. 522, it would have focused the jury's attention on second-degree murder, but respondent argues that a fairminded jurist could conclude that was contrary to trial counsel's attempt to seek an acquittal.  (ECF No. 29 at 11.)

Respondent agrees with the state court that the acquittal defense was rational because the trial court refused to instruct on voluntary manslaughter.  (ECF No. 39 at 11) (citing ECF No. 14-2 at 4-5).)  Respondent points out that a second degree murder conviction, including the firearm enhancement, would have resulted in a total sentence of 40 years to life, only ten years less in minimum parole eligibility than the first degree murder conviction petitioner received.  (ECF No. 29 at 12.)  Thus, respondent argues that it was reasonable for trial counsel "to conclude that avoiding a murder conviction was a rational and strategic priority."[4]  (Id.)

Respondent maintains that the evidence, prior trial court rulings, the given jury instructions, and counsel's goals as evidenced by his arguments support the state appellate court's finding that trial counsel made reasonable and strategic choices consistent with Strickland.  (ECF No. 29 at 12.)

Further, respondent argues that the jury's verdict, specifically finding that petitioner had the requisite mental state for first degree murder, forecloses a showing of Strickland prejudice.  (ECF No. 29 at 12.)  Contrary to petitioner's arguments, respondent counters that provocation is not a "defense."  (Id.) (citing Mathews v. United States, 485 U.S. 58, 63 (1988).)  Rather, respondent contends that provocation is "purely factual" evidence of the petitioner's mental state, similar to being too tired or intoxicated, and is "just part of what jurors would know is part of 'all' the evidence when assessing proof beyond a reasonable doubt."  (ECF No. 29 at 12.)  Therefore, respondent argues that the jury was only required to find the elements of the crime proven beyond a reasonable doubt, considering, and comparing all of the evidence, which they did, and the state appellate court found trial counsel could have reasonably relied on the adequacy of the given

---

[4] Respondent also noted that "defense attorneys rationally may decline instructions on lesser included offenses that are inconsistent with a chosen defense theory."  (ECF No. 29 at 12 n.4 (citing Butcher v. Marquez, 758 F.2d 373, 377 (9th Cir. 1985); Bashor v. Risley, 730 F.2d 1228, 1241 (9th Cir. 1984).)

instructions. (ECF No. 29 at 13.) Respondent argues petitioner failed to prove prejudice. (Id.)

C. Petitioner's Reply

Petitioner did not file a reply.

V. State Court Opinion

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> Defendant contends he was denied his constitutional right to the effective assistance of counsel at trial because counsel failed to request a CALCRIM No. 522 pinpoint instruction on subjective provocation. We are not persuaded.
>
> The burden is on defendant to establish ineffective assistance of counsel by a preponderance of the evidence. (People v. Ledesma (1987) 43 Cal.3d 171, 218.) To do so, a defendant "must show both that trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates, and that it is reasonably probable a more favorable determination would have resulted in the absence of counsel's failings." (People v. Cudjo (1993) 6 Cal.4th 585, 623, citing Strickland v. Washington (1984) 466 U.S. 668, 687-696 [80 L.Ed.2d 674, 693].)
>
> On direct appeal, as here, this burden is stringent. When the record on appeal " ' "sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citations.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (People v. Mendoza Tello (1997) 15 Cal.4th 264, 266-267; see People v. Jones (2003) 29 Cal.4th 1229, 1254.)
>
> Decisions about which jury instructions to request is an inherently tactical choice to be made by counsel. (People v. Padilla (2002) 98 Cal.App.4th 127, 137.) Here, the trial court instructed the jury on general principles of law, including murder and premeditation and deliberation. Counsel could have reasonably concluded the instructions given, which correctly stated the law, were adequate to address the issue of defendant's intent.
>
> Moreover, the trial court refused to instruct the jury on voluntary manslaughter, finding insufficient evidence of provocation. After that ruling, defense counsel may have made a strategic decision to focus on achieving a complete acquittal rather than leaving defendant to face a murder conviction, even one reduced to second degree murder under a theory of subjective provocation.

People v. Rogers, slip op. at 4-5 (ECF No. 14-2 at 4-5).

11

VI. <u>Analysis</u>

    <u>Defense Counsel's Performance</u>

The California Court of Appeal reasonably concluded that defense counsel's performance was not deficient for failing to request that the trial court instruct the jury with CALCRIM No. 522 that provocation could reduce a murder from first to second degree, because the jury instructions were adequate, and defense counsel's strategy was reasonable.

    <u>Jury Instructions Adequate</u>

As the appellate court properly noted, defense counsel could have reasonably concluded the instructions given were adequate to address the issue of defendant's intent. The jury instructions correctly stated the law. 5RT 1135-39 (ECF No. 28-11 at 46-50). The trial court properly instructed the jury that "[a] decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated." 5RT 1137 (ECF No. 28-11 at 48). The instructions explained that if the prosecution failed to prove that petitioner had the specific intent to commit first degree murder, the jury must find petitioner guilty of second degree murder. 5RT 1135-37 (ECF No. 28-11 at 46-48). The jury was instructed that

> [t]he crime charged in this case requires proof of the union or joint operation of act and wrongful intent. For you to find a person guilty of the crime of murder as charged in Count 1, that person must not only intentionally commit the prohibited act, but must do so with a specific intent or mental state.

5RT 1132 (ECF No. 28-11 at 43). Further, the jury was instructed that the prosecution had the burden of proving beyond a reasonable doubt that petitioner committed first degree murder rather than a lesser crime. 5RT 1137 (ECF No. 28-11 at 48). Indeed, following closing arguments, the trial court instructed the jury:

> You have been given verdict forms for guilty of first degree murder, guilty of second degree murder and not guilty.
>
> You may consider these different kinds of homicide in whatever order that you wish, but I can accept a verdict of guilt of a lesser crime only if all of you have found the defendant not guilty of the greater crime.

5RT 1178 (ECF No. 28-11 at 89). Such instructions fully encompassed the law regarding murder, and properly instructed the jury that petitioner could not be found guilty of first degree

12

murder unless they found he acted with premeditation or deliberation.

Defense Strategy

In light of the trial court's refusal to instruct on voluntary manslaughter, finding insufficient evidence of provocation, petitioner's theory of defense was to seek an acquittal based on an argument that there was insufficient evidence of deliberation and premeditation. 5RT 1166-69, 1173 (ECF 28-11 at 77-80, 84). Defense counsel provided four alternative scenarios that should result in an acquittal: petitioner and the victim were in an argument when the gun accidentally went off, killing the victim; the gun went off by itself; the gun malfunctioned; or the shooting was related to intoxication, noting the victim's alcohol level was .12. 5RT 1173 (ECF No. 28-11 at 84); see also 5RT 1163 (ECF No. 28-11 at 75) (defense counsel also noted the pathologist testified that the victim's blood was mixed with an amount of Vicodin or Norco). Defense counsel argued that these factors created a reasonable doubt as to whether petitioner "willfully, deliberately and premeditatedly murdered [the victim]." 5RT 1173-75 (ECF No. 28-11 at 84-86.)

Defense counsel also argued that there was evidence the victim humiliated petitioner in front of other people and the victim had flown into a fit of rage with a police officer. 5RT 1162 (ECF No. 28-11 at 73). Defense counsel argued that petitioner and the victim had a volatile relationship, they were two strong personalities, and they could have had an argument in the car, citing the blood found in the car and the victim's missing slipper. 5RT 1172 (ECF No. 28-11 at 83). He argued that if the gun went off during such an argument, that is not first or second degree murder. (Id.) Defense counsel explained that the victim was "generally aggressive," and "has a history of berating [petitioner] and [the victim's] drunk and high." (Id.)

Defense counsel's arguments also supported a finding that petitioner was guilty of second degree rather than first degree murder, because he argued there was insufficient evidence of deliberation and premeditation. 5RT 1166-69, 1173 (ECF 28-11 at 77-80, 84).

Further, prior to closing arguments, trial counsel stated he researched the issue of whether the jury should be instructed on voluntary manslaughter based on heat of passion (CALCRIM 570) but found nothing "useful in making any sort of argument to the Court," but reiterated his

prior argument that "a lesser included should be included as an instruction" and asked the court to reconsider. 5RT 1141 (ECF No. 28-11 at 52). The trial judge responded that he did not find "any substantial evidence that the killing was provoked" and "no substantial evidence [petitioner] acted while under the actual influence of a strong passion," and therefore there was insufficient evidence to support an instruction on the lesser included offense, adding:

> Obviously, a provocation that is not sufficient to support a lesser included voluntary manslaughter is still potentially available for purposes of negating the malice to reduce it to a second degree murder, which I am sure that you will argue. That is a different standard that the Court has to look at."

5RT 1142 (ECF No. 28-11 at 53). The trial judge's rulings supported not seeking instruction CALCRIM No. 522, and any attempt by defense counsel to seek CALCRIM No. 522 would have been denied. On this record, defense counsel was not ineffective for failing to seek such instruction. See Juan H. v. Allen, 408 F.3d 1262, 1273 (2005) ("trial counsel cannot have been ineffective for failing to raise a meritless objection"); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) ("failure to make a futile motion does not constitute ineffective assistance").

Thus, the appellate court reasonably concluded that trial counsel could have made a reasonable tactical decision to argue for acquittal rather than focus on second degree murder. Such decision was also reasonable given that a murder conviction of either degree carried with it the possibility that petitioner would spend the rest of his life in prison. Under the circumstances, including that the trial court denied defense counsel's request to instruct on voluntary manslaughter because the trial court found insufficient evidence of provocation, the California Court of Appeal reasonably concluded that defense counsel's decision not to request CALCRIM No. 522 did not fall below an objective standard of reasonableness under prevailing professional norms.

Prejudice

Moreover, for the same reasons, petitioner has not met his burden of showing even under de novo review that there is a reasonable probability that, but for defense counsel's failure to request the instruction on provocation (CALCRIM No. 522), the outcome of his trial would have been different. Porter v. McCollum, 558 U.S. 30, 39 (2009) (when state court's reasoned decision

fails to address both prongs of Strickland, district court reviews de novo the unaddressed prong) (citing Rompilla v. Beard, 545 U.S. 374, 390 (2005)).  Here, as previously discussed, the trial court properly instructed the jury that petitioner could not be guilty of first degree murder if he acted rashly or impulsively, and defense counsel argued during closing argument that there was no evidence of premeditation or deliberation.  Thus, even if counsel's representation was deficient by choosing the acquittal defense strategy, petitioner cannot show he was prejudiced by counsel's failure to request the instruction on provocation because the jury's first degree murder verdict demonstrates the jury found petitioner had the specific intent to kill and acted with the premeditation and deliberation required for first degree murder.  See, e.g., Landeros v. Biter, 2013 WL 6004187, at *10 (C.D. Cal. Nov. 7, 2013) ("in light of the trial court's instruction to the jury that first degree murder could not be based on '[a] decision to kill made rashly, impulsively, or without careful consideration' . . . [Landeros] failed to meet his burden of showing that there is a reasonable probability that, but for his trial counsel's failure to request the instruction on provocation [CALCRIM No. 522], the outcome of his trial would have been different."); see generally Weighall v. Middle, 215 F.3d 1058, 1063 (9th Cir. 2000) (defense counsel's failure to request jury instruction not prejudicial where the argument, evidence, and general instructions all put before the jury the specific issue that would have been addressed by the omitted instruction).

For all of the above reasons, the Court finds that the state court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

## VII. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why, and as to

which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: May 28, 2024

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/roge0238.157

16